IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

THE ALLIANCE GROUP, INC.,

Plaintiff,

v.

ZURICH AMERICAN INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS,

Defendants.

**8:21CV188**

**MEMORANDUM AND ORDER**

This matter is before the Court on defendants Zurich American Insurance Company ("Zurich American") and Zurich American Insurance Company of Illinois's (collectively, "Zurich") Motion to Compel Arbitration (Filing No. 8) under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-14, and the magistrate judge's finding and recommendation (Filing No. 22) recommending that Zurich's motion be denied. The magistrate judge concluded that the "operation of the [Nebraska Uniform Arbitration Act, Neb. Rev. Stat. 25-2601 *et seq.,*] and [the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015,] reverse preempts the FAA and renders the arbitration provision in [Zurich's insurance-program agreements with plaintiff The Alliance Group, Inc. ("Alliance")] invalid." To reach that conclusion, the magistrate judge found that the parties' express choice to have New York law govern their agreements was "unenforceable" because applying "New York law would violate a fundamental policy of Nebraska law."

Zurich objects (Filing No. 23) to the magistrate judge's findings and recommendation pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1).[1] Zurich raises "four primary reasons why" the "decision to reject the FAA

[1]Zurich notes some uncertainty about the proper standard of review for the magistrate judge's findings and recommendation in this case. This Court agrees with those courts holding that "a motion to compel arbitration is a non-dispositive motion" and can

and instead apply Nebraska state law" is incorrect. But Zurich needs just one good argument to compel arbitration. Its best is based on the parties' clear choice of New York law.

The magistrate judge's choice-of-law analysis ultimately turns on her application of Restatement (Second) of Conflict of Laws ("Restatement") § 187(2) (1971), which the parties appear to agree applies in this case. *See Am. Nat'l Bank v. Medved*, 801 N.W.2d 230, 237 (Neb. 2011) (adopting § 187). Under that section,

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Section 188, in turn, provides in relevant part

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

---

be decided by a magistrate judge. *Patton v. Johnson*, 915 F.3d 827, 832 (1st Cir. 2019); *accord Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 F. App'x 131, 133 (3d Cir. 2014) (unpublished); *accord Wojtalewicz v. Pioneer Hi-Bred Int'l, Inc.*, 944 F. Supp. 2d 715, 721 (D. Neb. 2013). The Court has treated the findings and recommendation as an order of decision, *see Patton*, 915 F.3d at 831, and applied a "clearly erroneous or contrary to law" standard of review under § 636(b)(1)(A) and Rule 72(a).

> (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Applying these factors, the magistrate judge determined Nebraska law should apply because, in her view, New York did not have "a substantial relationship to the parties or the transaction." The magistrate judge acknowledged Zurich American was incorporated in New York and had an office there but found that connection "is not substantial enough to allow the contractual choice of law to stand." The magistrate judge further found "the choice of law provision is also unenforceable under § 187(2) because application of New York law would be contrary to a fundamental policy of Nebraska, which has a materially greater interest in this action and would supply the applicable law" under § 188 in the absence of the parties' choice of New York law. The Court respectfully disagrees.

Section 187 evinces a strong policy in favor of enforcing the parties' contractual choice of law, particularly when chosen at arm's length by sophisticated and experienced business entities. *See* Restatement § 187 cmt. e; *Medved*, 801 N.W.2d at 236; *cf. Kuhn v. Wells Fargo Bank of Neb., N.A.*, 771 N.W.2d 103, 117 (Neb. 2009). Section 187(2) sets a clear default rule of applying the parties' choice with just two limited exceptions. Neither exception applies here.

First, § 187(2)(a) requires the Court to apply New York law unless New York "has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice." The Court finds that New York not only has a substantial relationship to the parties and the transaction in this case, but also that Zurich and Alliance

could have reasonably chosen New York law even without that relationship. The commentary to § 187 states that a substantial relationship exists when the chosen "state is that where performance by one of the parties is to take place or where one of the parties is domiciled or has his principal place of business." *See* Restatement § 187 cmt. f. Although the record is not clear as to whether Zurich performed any of its duties in New York, Zurich American's incorporation and office there establish a substantial relationship. *See*, *e.g.*, *St. Paul Fire & Marine Ins. Co. v. Bd. of Comm'rs of Port of New Orleans*, 418 F. App'x 305, 309 (5th Cir. 2011) (unpublished per curiam) ("New York has a substantial relationship to the parties because plaintiff insurer . . . is a New York corporation."); *ABF Cap. Corp. v. Osley*, 414 F.3d 1061, 1065 (9th Cir. 2005) (same); *Ciena Corp. v. Jarrard*, 203 F.3d 312, 324 (4th Cir. 2000) (concluding "that a party's state of incorporation provides the necessary 'substantial relationship' for application of its laws"). That conclusion is entirely consistent with the Nebraska Supreme Court's application of § 187. *See Medved*, 801 N.W.2d at 236 (explaining "that persons residing in different states may select the law of either state to govern their contract and that the parties' choice of law will govern").[2]

Even without Zurich American's substantial relationship with New York, Zurich and Alliance could have reasonably chosen New York law. As other courts have observed, New York has "a highly developed body of commercial law, so it is reasonable in cases of complex financial transactions for parties domiciled in different states to elect New York law to govern their disputes." *York Risk Servs. Grp., Inc. v. Couture*, 787 F. App'x 301, 307 n.2 (6th Cir. 2019) (unpublished) (quoting *Gen. Ret. Sys. of City of Detroit v. UBS, AG*, 799 F. Supp. 2d 749, 757 (E.D. Mich. 2011)); *accord Valley Juice Ltd. v. Evian Waters of France, Inc.*, 87 F.3d 604, 608 (2d Cir. 1996) (concluding the choice of "New York's highly developed body of commercial law . . . ensured uniformity in the interpretation of the contract, and decreased the legal costs associated" ancillary matters). Indeed, "to

[2]The magistrate judge reached a different conclusion based on *DCS Sanitation Management, Inc. v. Castillo*, 435 F.3d 892, 896 (8th Cir. 2006), but that case did not involve a party incorporated in the chosen state.

secure and augment its reputation as a center of international commerce," New York passed a statute that provides that the choice of New York law in certain large commercial contracts "is enforceable even if the transaction itself bears no reasonable relation to New York." *Lehman Bros. Com. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*, 179 F. Supp. 2d 118, 136 (S.D.N.Y. 2000) (discussing N.Y. Gen. Oblig. Law § 5-1401). The first exception to § 187(2) does not apply.

As to the second exception, the Court is not convinced that Nebraska has a "materially greater interest than" New York "in the determination of the particular issue." Nebraska and New York unquestionably take a different view of arbitration provisions in insurance contracts. Nebraska—though supportive of arbitration agreements in general—has carved out a limited exception for agreements to arbitrate future disputes relating to insurance policies (but not reinsurance contracts). New York, like the FAA, emphatically favors arbitration across the board.

Yet this Court "will not refrain from applying the chosen law merely because this would lead to a different result than would be obtained under the local law of the state of the otherwise applicable law." Restatement § 187 cmt. g. In the Court's view, Nebraska and New York both have a substantial interest in protecting their corporate citizens and in enforcing their respective policies on arbitration in insurance contracts. As noted, New York also has a substantial interest in enforcing choice-of-law provisions that designate New York law. *See Coface Collections N. Am. Inc. v. Newton*, 430 F. App'x 162, 168 (3d Cir. 2011) (unpublished) (concluding no "other state's materially greater interest" overcame Delaware's "substantial interest in enforcing [a] voluntarily negotiated contract clause that explicitly designate[d] Delaware law to govern").

Alliance argues that enforcing the choice-of-law provision to which it readily agreed to "would divest the States' control of the sale of insurance within their borders" and tear "[t]his highly regulated industry, ceded by Congress to the States, . . . loose from decades of control by two small clauses of adhesion buried in massive contracts." That does sound

bad. But it smacks of hyperbole given what is really at issue here. And, as such, it does little (or nothing) to establish Nebraska's "materially greater interest" in its carve out for arbitration clauses in certain insurance contracts.

What's more, Nebraska's interest in protecting its insureds would seem to be less where the parties to the insurance contract are sophisticated business entities and the potential beneficiaries of the insurance at issue are concentrated more heavily in Nebraska but are scattered across the country. *See* Restatement § 187 cmt. g (noting the importance of "the oppressive use of superior bargaining power" and explaining "[t]he parties' power to choose the applicable law is subject to least restriction" when the significant contacts in the case are more widely dispersed). This is not a dispute with an unsophisticated individual policyholder. Alliance reports having approximately 3,000 employees and operates a complex business that "provides payroll services and workers compensation insurance to companies . . . throughout the United States." Its characterization of itself as a hapless victim of Zurich's nefarious attempt to bury a "clause of adhesion in a massive contract" to surreptitiously destroy "the States' regulatory powers" over the insurance industry rings hollow.

Under the circumstances of this case, Nebraska's interest in determining the validity of an arbitration provision in an agreement relating to an insurance policy is not *materially* greater than New York's interest in promoting arbitration. Because neither exception to §187(2) applies, the parties' choice of New York law governs. Alliance does not dispute the parties' arbitration agreement is valid and enforceable under New York law. Accordingly, Zurich is entitled to arbitrate its dispute with Alliance in accordance with the parties' agreements and the FAA.

For the foregoing reasons,

IT IS ORDERED:

1. Defendants Zurich American Insurance Company and Zurich American Insurance Company of Illinois's objection (Filing No. 23) to the magistrate

judge's decision to reject the Federal Arbitration Act and apply Nebraska law (Filing No. 22) is sustained.

2. The magistrate judge's determination that Nebraska law applies in this case and that the parties' arbitration provision is invalid is set aside.
3. The defendants' Motion to Compel Arbitration (Filing No. 8) is granted. The parties are directed to proceed to arbitration in accordance with the terms of their agreements.
4. The defendants' request to dismiss the case pending arbitration is denied.
5. This case is stayed pending arbitration.
6. The parties shall file a joint status report regarding the progress of arbitration proceedings every ninety (90) days beginning March 1, 2022.
7. The Clerk of Court is directed to set an initial Status Report Deadline of March 1, 2022.

Dated this 16th day of November 2021.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge